John Paul MITCHELL, Petitioner,

v.

Robert F. KENNEDY, Attorney General of the United States, and J. C. Taylor, Warden, United States Penitentiary, Leavenworth, Kansas, Respondents.

No. 3604 H. C.

United States District Court
D. Kansas.

Aug. 11, 1964.

James A. Pusateri of Payne, Jones, Anderson & Payne, Olathe, Kan., and Jon C. Christlieb of Stanley, Schroeder, Weeks, Thomas & Lysaught, Kansas City, Kan., for petitioner.

Newell A. George, U. S. Atty., and Benjamin E. Franklin, Asst. U. S. Atty., Topeka, Kan., for respondents (Abraham Nemrow, Lt. Col., JAGC, and Joseph J. DeFrancesco, JAGC, Dept. of the Army, Washington, D. C., were with them on brief).

ARTHUR J. STANLEY, Jr., Chief Judge.

This is a habeas corpus proceeding in which petitioner contends that his detention in the United States Penitentiary at Leavenworth, Kansas is unlawful. He contends that as a military prisoner he is entitled to have his "good time credits," as well as his release from confinement, determined in accordance with military regulations which make no provision for a conditional release.

The facts are not disputed. Petitioner, while on active duty with the United States Army in England, was convicted by a general court-martial of, (1) the premeditated murder of another soldier, (2) carrying a concealed weapon, and (3) being absent without leave. He was sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for the term of his natural life. The sentence was approved; appellate review was had; the

sentence ordered executed; and the United States Penitentiary at Lewisburg, Pennsylvania was designated as the place of confinement. On January 9, 1951, so much of the sentence as was in excess of 21 years was remitted.

Petitioner's place of confinement has since been changed several times. In May of 1962, while held at Alcatraz, in California, he petitioned the United States District Court for the Northern District of California for a writ of habeas corpus. He there contended that his "good time" should be computed in accordance with Army Regulations 633–30 rather than with 18 U.S.C.A. § 4161, and that as so computed his good time entitled him to immediate release. Petitioner apparently was prompted to so petition by the decision of the Court of Appeals for the Ninth Circuit in Blackwell v. Edwards, 303 F.2d 103 (9th Cir. 1962), which, broadly construed, supported petitioner's argument. That District Court, however, held petitioner's writ prematurely brought, and dismissed. While appeal from this decision was pending, petitioner was transferred, on January 23, 1963, to the United States Penitentiary at Leavenworth, Kansas.

Shortly after petitioner's arrival at Leavenworth, the Director of the Bureau of Prisons decided to give petitioner the benefit of good time computed in accordance with the ruling in Edwards, because his appeal was pending in the Court of Appeals for the Ninth Circuit at the time he was moved out of that Circuit. According to the provisions of 18 U.S.C.A. § 4161, petitioner's mandatory release date was April 23, 1963; however, under the Edwards ruling, the release date was computed to be January 12, 1963. When this decision was made, petitioner was processed for immediate release and was given a mandatory release on February 5, 1963. At the time of his release petitioner protested that he was entitled to an unconditional rather than a conditional release, and for this reason declined to sign the release. The conditions were then read to him and he was released.

Whether or not the conditions were binding on the petitioner, he did violate them. And pursuant to the violation, the release was revoked; the petitioner arrested, and required to serve the difference in time between his mandatory release date and the full term of the sentence.

Petitioner argues: First, that he was *entitled* to have his good time computed in accordance with Army Regulations 633–30 because (a) "(t)his regulation is applicable to prisoners tried by general courts-martial," and (b) that 18 U.S. C.A. § 4161 is no longer applicable to determine the good time of military prisoners confined in federal penitentiaries; and, second, that his good time *was in fact* computed in accordance with Army Regulations 633–30. Petitioner's conclusion is that since there is no provision for the imposition of conditions on a release given pursuant to military good time, his original release was absolute, the attempted conditions were invalid, and his present incarceration is illegal.

Petitioner is here making the standard argument, namely, that a military prisoner convicted by a court-martial but confined in a federal prison is controlled by military law and regulations rather than by federal law and regulations. The Tenth Circuit has consistently held to the contrary.

In Osborne v. Taylor, 328 F.2d 131 (10th Cir. 1964), the court, directing attention to almost the precise arguments now made, said:

"Appellant uses the decision of Blackwell v. Edwards (Blackwell v. Ragan), 303 F.2d 103 (9th Cir.), holding that good time is to be computed under Army Regulations, as holding that the entire chapter 309 of 18 U.S.C. does not apply to military prisoners. Hence he argues that Section 4164 of that chapter, providing that when a prisoner is released at the mandatory release time the release is on parole, does not apply to him. We have held in Easley v. United States, 257 F.2d

174 (10th Cir.), and in Stewart v. United States Board of Parole, 285 F.2d 421 (10th Cir.), cert. den. 365 U.S. 862, 81 S.Ct. 830, 5 L.Ed.2d 825, that 18 U.S.C. § 4164 does apply to military prisoners." l. c. 132.

See also McKnight v. Hunter, 98 F. Supp. 605 (D.Kan.1951). Since military prisoners in federal custody are governed by federal release provisions, petitioner's objection that there is no provision in the Uniform Code of Military Justice for a conditional release is of no concern and does not affect this decision.

As petitioner points out, § 58 of the Uniform Code of Military Justice (10 U.S.C.A. § 858) is authority for holding federal rules applicable to federally confined military prisoners. In part, the section states:

> "* * * [A] sentence of confinement adjudged by a court-martial * * * may be carried into execution by confinement in * * * any penal or correctional institution under the control of the United States * * *. Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts * * *."

With reference to this statutory provision, petitioner cites Volume 1 of the Judge Advocate General Digest, Prisoners, IV, Release or Discharge, § 83. The note found there says that § 58 of the Uniform Code of Military Justice applies only to discipline and treatment while confined and does not require naval prisoners to be subject to conditions and supervision upon release. Petitioner maintains that this should apply to all military prisoners. Whether or not it should apply to all military prisoners, this court declines to follow it. As respondent has pointed out, the material quoted and relied upon by petitioner was only the opinion of one branch of the service and it has since been reconsidered and withdrawn.

Petitioner further contends that to subject him to a conditional release denies him equal protection of the laws, in violation of the Fifth Amendment. He acknowledges the holding in Koyce v. United States Board of Parole, 306 F.2d 759 (D.C.Cir. 1962), the leading case, which found no unconstitutional discrimination in providing for different release provisions for those confined to federal penitentiaries and those in military confinement. The court said: "In determining whether he is being denied equal protection of the laws the class to which he belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject." l. c. 762. But, petitioner protests, to define the class by the place confined is improper. He contends that the class should be defined by the sentencing authority. He asserts that by defining the class by the place of confinement is to test his rights by those others who are suffering the same injustice that he is suffering. The argument is fallacious. By sentencing a prisoner to confinement in a federal penitentiary, a court-martial imposes a sentence which by its terms includes the possibility of a conditional release. See Johnson v. Hiatt, 71 F.Supp. 865 (M.D. Pa.1947); Fitch v. Hiatt, 48 F.Supp. 388 (M.D.Pa.1942). A conditional release is an incident of a sentence to a federal penitentiary. Thus sentences to federal confinement and to military confinement are in fact different sentences and not similar sentences to different places.

The second objection made by this petitioner has to do with the computation of his good time credits. Petitioner contends that this court should follow the decision of Blackwell v. Edwards, supra, and rule that the good time credits of federally confined military prisoners should be computed in accordance with military regulations, specifically those found in Army Regulations 633–30. Neither this court, nor the Tenth Circuit has been called upon to determine this problem in the light of Army Regulations

633–30 and the Edwards case. Combined, the two have generated a great deal of litigation and it seems advisable to set the views of this court out at some length in an effort to avoid unnecessary litigation in the future.

The problem with which we are here concerned develops from the fact that military prisoners may be confined in federal penitentiaries and from the fact that the federal statutes providing for the computation of good time credits are not precisely like the military regulations. The federal statute, 18 U.S.C.A. § 4161 provides in part:

> "Each prisoner * * * confined in a penal or correctional institution * * * shall be entitled to a deduction from the term of his sentence beginning with the day on which his sentence commences to run, * * * as follows:
>
> * * * * * *
>
> "Ten days for each month, if the sentence is ten years or more."

Army Regulations 633–30 dealing with good time credits (which it refers to as abatements) is divided into two parts: one dealing with sentences adjudged prior to 31 May 1951, and another with those adjudged subsequent to that date. The two sections are substantially the same; however, since the present situation involves a sentence imposed prior to 31 May 1951, we shall deal with that section.

Army Regulations 633–30, Section II, paragraph 10, provides in part:

> "*Rate of abatement for good conduct.* Good conduct time will be credited at the following rates:
>
> * * * * * *
>
> "b. Five days for each month for the first 12 months of the sentence and 10 days for each succeeding month of the sentence if the sentence, other than for life, exceeds 1 year."

Section III, paragraph 15, sets out parallel provisions for the abatement of sentences adjudged after 31 May 1951. It is the same as the federal statute.

In Section II, paragraph 12 (on which the petitioner is relying), there is a second confusing provision. It provides in relevant part:

> "*Crediting good conduct time earned in Federal penal and correctional institutions.* To determine the amount of good conduct time earned at statutory rates by a military prisoner while serving a military sentence in a Federal penal or correctional institution and to be credited to him on the date of his return to military control, the following rates are applicable:
>
> * * * * * *
>
> "e. For each month spent in confinement, 14.8 days if the sentence, other than life, is 10 years or more."

(The parallel provision providing for sentences adjudged subsequent to 31 May 1951 is found in Section III, paragraph 16.)

Hence, it may be seen that the federal statutory provisions and the military regulations have substantially similar sections which credit a prisoner, military or federal, with certain good time credit at the commencement of his sentence. The military regulations, but not the federal statutes, have an additional provision which permits determination and application of good time credits on the basis of time served in confinement rather than on the length of the total sentence. What happens in the typical time-computation case is that the federally confined military prisoner sees the difference in figures and assumes that (1) it will make a difference in the time served if one method or the other is applied, and (2) that his time should be computed by the military regulations. This approach is faulty on both counts.

In the first place, the two systems were not designed to, and do not in fact, result in a substantial difference in the total time served. Blackwell v. Edwards, supra, upon which petitioner relies explains this fully. As that court observed: "The 10-day and the 14.8-day rates are interrelated." l. c. 108. See

Sunday v. Settle, 211 F.Supp. 504 (W.D. Mo.1962).

The fact that the two methods of computation produce substantially the same result raises the question of why both provisions are included in the Army Regulations. A re-reading of Section II, paragraph 12, provides the answer, and in so doing further shows that it should not apply in the computation of petitioner's good time. The first sentence of paragraph 12 provides: "To determine the amount of good conduct time earned at statutory rates by a military prisoner while serving a military sentence in a Federal penal or correctional institution and *to be credited to him on the date of his return to military control* * * *." (Emphasis supplied). Clearly, the subsequent provision for 14.8 days good time credit was not intended to be used in the computation of good time credits absent his return to military control. There was no such return in the present case and the provision is not applicable.

This disposes of the arguments that petitioner presents to this court except for that urging the court to accept and apply the holding in the Edwards case. The precise question which confronted the court in that case was: Whether a military prisoner in federal custody sentenced by a court-martial after the effective date of the Uniform Code of Military Justice can earn good time credits for his time in confinement when by reason of forfeiture he is required to serve beyond the minimum release date? And, if so, at what rate should they be credited? The holding was that he could and that it would be at the rate of 14.8 days per month of actual confinement. Notwithstanding what has been said above, I do not believe that the Edwards decision is convincing authority in the present case. As noticed, Edwards involved a sentence handed down subsequent to the effective date of the Uniform Code of Military Justice. In this regard, a Ninth Circuit District Court has said of Edwards: "(T)his decision dealt only with sentences imposed after the effective date of the Uniform Code of Military Justice, May 31, 1951, 50 U.S.C.A. Appendix, § 551 et seq. and is not necessarily applicable to petitioner's sentence, which was imposed on August 17, 1945." Bullock v. Blackwell, 210 F.Supp. 437 (N. D.Calif.1962). And even the Edwards court itself, when it laid down its broad conclusion that good time credits should be controlled by military rather than federal rules, was careful to say, " * * * at least since the effective date of the Uniform Code of Military Justice. * *."

The Edwards case is further weakened as authoritative precedent by its failure to take into consideration certain apparently relevant provisions of the statutes and regulations.

Section 58 of the Uniform Code of Military Justice (10 U.S.C.A. § 858), which, as noticed above, provides that " * * * [military prisoners] confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as [other] persons confined * * *."

Furthermore, in holding Army Regulations 633–30 applicable to federally confined military prisoners, Edwards fails to consider the opening statement of the Regulations:

"These regulations prescribe procedures for the computation of sentences to confinement of persons subject to the Uniform Code of Military Justice serving sentences in the custody of the Department of the Army."

The same Regulations provide later, in Section I, paragraph 6, sub. c(1):

*"(1) Sentences adjudged prior to 31 May 1951.*

"(a) Good conduct abatement earned on sentences which provided for confinement in Federal penal or correctional institutions will be credited at the statutory rate prescribed for such institutions[i] for that period of the sentence served in a Federal penal or cor-

rectional institution and at the rate prescribed for Army confinement facilities for that period of time actually served in such facilities.

\* \* \* "

The plain import of these provisions of the Military Code and the Army Regulations seems to this court to be that federal statutory rules are to control computation of good time in the case of military prisoners in federal confinement.

This court holds that petitioner was not entitled to an unconditional release or to have his good time computed in accordance with Army Regulations 633–30.

The writ will be discharged and the petitioner remanded to the custody of the respondent.